## A. G. SPALDING & BROS. v. EDWARDS, Collector of Internal Revenue.

(District Court. S. D. New York. September 13, 1922.)

Internal revenue ⬤⫸11—Sales tax on goods sold for export held valid; "exportation."

A sale of baseball bats and balls by the manufacturer, which by direction of the purchaser marked the same for export and delivered them to an export carrier, taking a receipt which it delivered to the purchaser, who paid for the goods and made the shipment, *held* not an "exportation" of the articles, within Const. art. 1, § 9, and subject to sale tax under Revenue Act October 3, 1917, § 600 (Comp. St. 1918, § 6309¾a).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Export—Exportation.]

At Law. Action by A. G. Spalding & Bros. against William H. Edwards, Collector of Internal Revenue for the Second District of New York. On demurrer to complaint. Demurrer sustained.

Lord, Day & Lord, of New York City (Franklin Grady, of New York City, of counsel), for plaintiff.

William Hayward, U. S. Atty., of New York City (Richard S. Holmes, Asst. U. S. Atty., of New York City, of counsel), for defendant.

KNOX, District Judge. The complaint herein, containing three causes of action, was filed to recover the sum of $11.11, the amount of certain war excise taxes assessed and collected by defendant under the alleged authority of section 600 of the revenue act of 1917. The tax was laid in respect of the sale by plaintiff of certain sporting goods for export to foreign customers. Each cause of action relates to a separate sale, and each exportation was had to a different country. Nevertheless the facts are essentially similar, and one statement thereof will sufficiently indicate whether a good cause of action is set forth.

Delgado & Cia., a business firm at La Guaira, Venezuela, on November 20, 1918, ordered Scholtz & Co., a shipping and export commission house in this city, to purchase for their account and risk a quantity of baseballs and baseball bats, manufactured within the United States by plaintiff, and to cause the same to be shipped to La Guaira. Scholtz & Co. purchased the merchandise from plaintiff, agreeing to pay for the same within 10 days. At the same time plaintiff was instructed to mark the goods for shipment to Venezuela. This was accordingly done. The packages were delivered into the custody of Atlantic & Caribbean Steam Navigation Company, an exporting carrier, a receipt therefor being obtained by plaintiff. This was delivered to Scholtz & Co., which concern, in due course, exchanged the receipt for the carrier's export bill of lading, dated February 20, 1919.

Under date of January 22, 1919, plaintiff forwarded to Scholtz & Co. an invoice of the goods which was paid upon February 1, 1919. For services performed Scholtz & Co. received a commission of 5 per cent. of the amount of the purchase price, marine insurance, freight charges, and other such items, from Delgado & Cia., upon whose open account, payable in 90 days, the purchase had been made. Tax upon

⬤⫸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the sale having been assessed and demanded by defendant, the same was paid under protest and to prevent the distraint and sale of plaintiff's property. Thereafter application for a refund was duly made by the plaintiff, and, this being of no avail, suit was instituted as aforesaid.

The basis of the effort to recover is that the tax constitutes a burden upon exports, and is in consequence contrary to article 1 of section 9 of the federal Constitution which reads:

"No tax or duty shall be laid on articles exported from any state."

The statute under which defendant assumed to act provides:

"Sec. 600. That there shall be levied, assessed, collected, and paid—
*      *      *      *      *      *      *

"(f) Upon all tennis rackets, golf clubs, baseball bats, lacrosse sticks, balls of all kinds, including baseballs, * * * sold by the manufacturer, producer, or importer, a tax equivalent to three per centum of the price for which so sold." (Comp. St. 1918, § 6309¾a).

It is conceded that the tax is upon sales, and not upon the manufacture of the goods. In support of its position plaintiff argues that while the foreign journey or movement of the merchandise is one thing, and the buying and selling which occasion such movement is another thing, both are nevertheless parts of and steps in the export trade, and that each therefore constitutes a part of the process of exportation, and as such is free from taxation. In connection therewith attention is called to the case of Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 Sup. Ct. 106, 66 L. Ed. 239, decided by the Supreme Court upon December 12, 1921, where it was held that, when goods are purchased in one state for transportation to another, the commerce therein includes the purchase quite as much as it does the transportation. To this the defendant replies that a distinction is to be made between tax on the exportation of articles and a tax on a transaction in foreign or interstate commerce, saying that Congress may, if it wishes, lay taxes upon transactions in foreign commerce, so long as the act of exportation and its immediate incidents and instrumentalities are exempted therefrom.

A consideration of the numerous authorities cited by the respective parties has convinced me that defendant's demurrer, attacking the sufficiency of the complaint, must be sustained. It may be, as argued, that, had plaintiff, in pursuance of its sale, actually attended to the details of taking out the ocean bill of lading, upon the shipment to Delgado & Cia., and forwarded the same, with the draft attached, to its customer, the transaction would not be subject to the tax. In that event, there would have been such a relationship between the successive steps of the process of exportation as to admit of but little question as to its nature.

Here, however, the sale was wholly made and consummated within the United States; the only part played by plaintiff in the actual export movement was that at the request of its purchaser it marked and delivered the goods to the steamship company. So far as plaintiff was concerned, the merchandise might have been removed from the carrier's custody by Scholtz & Co. and resold within the United States.

The reason for this was that no actual export movement on the part of plaintiff was ever begun. And as Judge Hough said in this court, in Peck v. Lowe, 234 Fed. 126:

"Protection [from taxation] begins with that act [of exportation] and must end with its completion."

The most that can be said of plaintiff's activities is that in selling the merchandise, and delivering the same to the carrier, it made the goods available for exportation by the purchaser. The sales tax now under consideration was not imposed because the goods were to be sent abroad, but was levied upon all sales of goods of the same class, whether intended for use in the domestic or foreign trade, and it is, I think, well within the reasoning employed by the Supreme Court in Peck v. Lowe, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. Ed. 1049. It was there said, quoting from Thames & M. M. Ins. Co. v. United States, 237 U. S. 25, 35 Sup. Ct. 498, 59 L. Ed. 821, Ann. Cas. 1915D, 1087:

"That where the tax is not laid on the articles themselves while in course of exportation the true test of its validity is whether it 'so directly and closely' bears on the 'process of exporting' as to be in substance a tax on the exportation. * * * In this view [of the case] it has been held that the [constitutional] clause [above quoted] does not condemn or invalidate charges or taxes, not laid on property while being exported, merely because they affect exportation indirectly or remotely."

The tax upon the sales in question did nothing more than this, and while it is doubtless true that the line by which the beginning of an actual export movement is to be marked may at times be difficult to ascertain, and of necessity arbitrarily fixed, I am of the opinion that it is not for me to broaden the interpretation heretofore placed upon the constitutional provision by the Supreme Court. To sustain the plaintiff's contention would have that effect.

The demurrer interposed to each cause of action will be sustained, and plaintiff's complaint dismissed.

⊚⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes