Oliver Eslinger

*v.*

Miller Brothers Company, Inc.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

Rehearing Denied July 11, 1958.

Ogle & Ogle, Sevierville, for appellant.

Frantz, McConnell & Seymour, Knoxville, Wynn & Wynn, Sevierville, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a workmen's compensation case which originated in the Chancery Court by an original bill filed by Miller Brothers against Eslinger seeking a declaratory judgment as to its liability for compensation.

The contention of Miller Brothers, who was the defendant's employer, was that the injury complained of did not arise out of and in the course of the employment. The defendant filed an answer and cross bill charging that he had been a regular employee of Miller Brothers, Inc., since 1950 and was so employed on July 27, 1956, at which time he had a heat stroke. The circumstances of its occurrence and extent of it is thus alleged:

"Cross complainant alleges that while thus working for the cross defendant company in the regular course of his employment he suddenly, accidentally and while in the course of his employment, and due to the intensive heat on that day, suffered a severe heat stroke which caused him to fall or sit down and caused him to be lifeless, his head swimming and unable to do anything. He was immediately sent to Dr. Roberts in Sevierville, Tennessee, where he was treated and was later sent to Dr. Powers at the Acuff Clinic in Knoxville, Tennessee, where he was treated for some time.

"As a result of said accident and injury he became totally and permanently disabled and is now totally and permanently disabled from following any gainful occupation.

"The cross defendant company began paying him $29.64 per week. It recognized his disability and its liability under the Workman's Compensation Law, T.C.A. sec. 50-901 et seq. Said company continued to pay him until May 25, 1957, when it refused to pay him any further. Your cross complainant has never recovered from the said heat stroke and is now totally and permanently disabled from following any gainful occupation. He believes that he will continue to be totally and permanently disabled throughout his natural life."

We will refer to the parties as they appeared in the cross action, not as "cross complainant" and "cross defendant", but to Eslinger as the petitioner and Miller Brothers, Inc., as the defendant.

The facts show without dispute that Mr. Eslinger had been employed by Miller Brothers since 1950 as a com-

mon laborer. He was 66 years of age at the time of the alleged accident and suffered a heat stroke while he was at work. His work required loading cars, handling lumber, flooring, and the like and while so engaged he became overheated. He stated to his foreman, a Mr. Whitson, on Monday, "I got too hot Friday. I had a heat stroke here and I want you to send me to the Company Doctor." He was told to see his family doctor in Sevierville, a Dr. Roberts.

There can be no doubt but that he had a severe heat stroke or "heat exhaustion" on July 27, 1956, to the extent that he required medical aid. He went to see Dr. Roberts for examination and treatment on July 30th. As to his condition at that time we quote the testimony of Dr. Roberts as follows:

"Q. What was his condition when he came to your office, Doctor? A. Acted like a drunk man, could not stand up pitching around, staggering.

"Q. Did you examine him and diagnose his trouble? A. Yes, from external examination only, no other tests were made.

"Q. State what you diagnosed his trouble to be? A. I thought he had a heat stroke.

"Q. Did he inform you what had happened while he was working in Knoxville? A. Yes.

"Q. Do you remember what he told you? A. Said he was at work and got so hot and turned blind that he went over and sit down for a little bit then came on home.

"Q. You think that he, from your examination and

experience as a practicing physician, did have a heat stroke? A. That is my opinion that he did.

"Q. Do you remember whether or not he was running a temperature at that time? A. I know his face was red, I don't recall whether or not I took his temperature, I couldn't find my record, around here somewhere—I know he was awful red in the face.

"Q. You say he was staggering? A. Yes, could not stand up, seemed like his head wanted to drop over.

"Q. Walking with a cane? A. Yes, he walks with a cane when he comes now. I gave him Nicotinic Acid to try to clear up the feeling he had in his head."

He further testified that Mr. Eslinger "is a diabetic", but to what extent the record is silent. It is conceded that a heat stroke would not cause diabetes. Continuing Dr. Roberts' testimony:

"Q. What causes a heat stroke? A. Getting too hot.

"Q. What is the usual effect of that? A. Similar to what I have told Mr. Ogle—staggering and pitching around. I told him to use ice on his head.

"Q. A person who suffers from a heat stroke ordinarily recovers quite rapidly from the effects of the heat stroke? A. Depends on the severity of the stroke. Some come out pretty soon and some don't come out hardly at all.

"Q. A heat stroke affects the brain? A. Yes, I have not had time to look it up, it is a thing happens once or twice in a lifetime."

There is no dispute as to the petitioner having had a heat stroke while at work. The foregoing testimony of

Dr. Roberts (who is a capable medical man) discloses the effect of a heat stroke. The evidence also shows that Mr. Eslinger had suffered from hardening of the arteries for several years prior to the day he had this heat stroke. The medical term used by medical experts for hardening of the arteries is "arteriosclerosis". Dr. Roberts gave it as his opinion that a heat stroke would have no causative effect on arteriosclerosis.

Now there is abundant evidence to sustain the petitioner's contention that he is totally and permanently disabled from following any gainful occupation. This fact is not seriously controverted.

But the defendant insists that this condition was not an accidental injury "which arose out of or in the course of his employment"; that the heat stroke was not a contributing cause. The learned chancellor took this view of the case and dismissed the petition. In his opinion he said among other things: "The Court feels the responsibility in this matter, but I cannot see that this would not have happened whether he was with Miller Brothers or whether he had been walking down Main Street."

The petitioner's assignments of error question the judgment of the Chancellor, contending that he erred in sustaining the defendant's theory of non-liability.

In support of the assignment of error that the Chancellor erred in his opinion, the petitioner's counsel invokes the ruling of this Court in *King v. Buckeye Cotton Oil Co.*, 155 Tenn. 491, 296 S.W. 3, 4, 53 A.L.R. 1086, wherein it was held, "While this court is bound by the findings of the trial judge on questions of fact whenever

there is any evidence to sustain the finding, it is not bound by the conclusions drawn by the trial judge from undisputed facts'', and more especially does he rely on *Swift & Co. v. Howard*, 186 Tenn. 584, 212 S.W.2d 388, 391. In this latter case it was held:

"When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of the disability, i. e., excites and aggravates a previous weakened condition then the employer is liable."

The foregoing citation of authority brings us to a consideration of the defendant's evidence, and especially to that of Dr. W. W. Powers, who is conceded to be a capable medical expert. Dr. Powers explained that there was a technical difference between "a heat exhaustion" and "a true heat stroke", the latter "is almost 100% fatal". It was his opinion that Mr. Eslinger had not had a true heat stroke and that the heat exhaustion suffered by the petitioner did not cause or aggravate the "arteriosclerosis and Parkinson".

"Q. Was that sugar diabetes caused or aggravated in any way in your opinion by the alleged injury he received while employed on July 27, 1956? A. No.

\* \* \* \* \* \* \*

"Q. You say, doctor, in 1952 this man had arteriosclerosis? A. Yes.

"Q. And when you examined him in August of 1956 he had arteriosclerosis? A. Yes.

\* \* \* \* \* \* \*

"Q. And the fact he had a heat stroke or heat exhaustion to the extent some of his co-workers notice he was trembling and that his color was changing and this came on rather suddenly as a result of working in a hot place and two or three days later diagnosed by doctors as a heat stroke, you think it was not an aggravation of his pre-existing trouble? A. *I think it formed a temporary aggravation at the time of the over heating.* (Emphasis supplied.)

"Q. But not a permanent aggravation? A. No sir, I do not."

Dr. Powers' testimony is cited by defendant's counsel as some material evidence to support the Chancellor's decree, and that under the holdings of this Court it is conclusive of the issue on appeal. But his testimony must be considered as a whole in the light of facts which are not disputed. Moreover his opinion is based upon an assumption which may or may not be true, such as that Mr. Eslinger did not suffer a "true heat stroke" because he could not have survived, and for this reason he was forced to the conclusion that it was a case of "heat exhaustion"; that "it was temporary in effect".

Now in all deference to the learned doctor, we think the admission by him that the heat stroke aggravated a pre-existing disease, even temporarily, made a compensable injury. The question naturally arises, if it was "temporary, not permanent", then to what extent was he injured, i. e. for what period of time was he disabled?

The essential facts necessary to support the petitioner's claim, and which are undisputed, are the following:

(1) Mr. Eslinger's injury, a "heat stroke" or "heat exhaustion" occurred *while at work*. (2) He became totally and permanently disabled as a result thereof, according to all the evidence including the testimony of Dr. Powers. (3) It aggravated a pre-existing disability, to wit, "arteriosclerosis", *to some extent* at least, as appears from Dr. Powers' testimony to which special reference is made in this opinion.

We cannot consider the aggravating effect of the heat stroke upon the pre-existing cause as temporary only when it came very near to being fatal. Moreover it is shown without dispute that three days following its occurrence Mr. Eslinger was totally disabled, and at the time of the trial, according to Dr. Powers he was totally and permanently disabled. If the heat stroke aggravated the pre-existing "arteriosclerosis" *in any degree* then under the great weight of authority, and especially in Milstead's case, *infra,* and cases therein cited, this Court cannot write it off as temporary, when all medical experts agree that the petitioner is totally and permanently disabled. We are constantly admonished by the statute (section 50-918, T.C.A.) that an equitable construction must be given "to the end that the objects and purposes of this law may be realized and attained."

We think the holding of this Court in *King v. Buckeye Cotton Oil Co.; Swift & Co. v. Howard, supra,* and *McCann Steel Co. v. Carney,* 192 Tenn. 94, 237 S.W.2d 942, and relied on by the petitioner, are applicable to the case at bar. As further supporting authority see *Milstead v. Kaylor,* 186 Tenn. 642, 212 S.W.2d 610, wherein this Court held: "Death caused by heat prostration, sun-

stroke or heat exhaustion is compensable.'' The Court also held:

"Where an employee is found dead at his post of labor, without direct evidence as to manner of his death, an inference may arise of an accident springing out of and in course of his employment, and when such *prima facie* case is thus made out, burden shifts to employer to produce evidence to overthrow such a *prima facie* case.''

In *Boyd v. Young,* 193 Tenn. 272, 246 S.W.2d 10, 13, the Court used this language:

"Our cases are too numerous to require citation holding that where an accident can be fairly said to be a contributing cause of death, it is compensable under the statute, even though the injured employee was suffering from some prior disability of a serious nature. *McCann Steel Co. v. Carney,* (192 Tenn. 94) 237 S.W. 2d 942; *Tapp v. Tapp,* (192 Tenn. 1) 236 S.W.2d 977.''

We deem it unnecessary to cite additional authority to support the petitioner's insistence that his injury was an accident which arose out of and in the course of his employment. The assignments of error are sustained.

The cause is reversed and remanded for a final decree for total permanent disability as provided in Section 50-1007, subsection (d), T.C.A., and will be retained upon the trial docket for such further orders and decrees as may become necessary for its enforcement.

On Petition to Rehear.

SWEPSTON, JUSTICE.

A petition to rehear has been filed in behalf of Miller Brothers Company, Inc. Opposing counsel reply

that the petition should be dismissed because of failure to comply with Rule 32 of this Court, requiring the petition to be filed within 10 days of the filing of the opinion of the Court. The opinion was filed on June 6, 1958, and the petition was filed on June 16, 1958. This is within the 10 days. T.C.A. sec. 1-302 provides that in computing time the first day is omitted and the last day is included.

The petition to rehear is a re-argument of the matters presented to and considered by the Court heretofore with emphasis by counsel upon the case of *Drinnon v. Pope,* 202 Tenn. 684, 308 S.W.2d 424. Therefore, the petition must be overruled.

As a last resort, petitioner for the first time asserts that the judgment of the lower court must be affirmed because the bill of exceptions fails to include the words "this is all the evidence", or other words of like import.

We think first, that this insistence comes too late. Both counsel have proceeded in this Court on the assumption that the record is complete, the Court has worked the record, written and released its opinion. See *Tennessee Oil Co. v. McCanless,* 178 Tenn. 683, 704, 157 S.W.2d 267, 162 S.W.2d 1081.

Secondly, we think the record includes a much broader statement on page 61, wherein it is said:

"The foregoing is all the proceedings had upon the trial of this cause."

That statement appears above the signature of the trial judge approving the bill of exceptions. It is a

broader term than the statement that this is all the evidence.

See Black's Law Dictionary for the definition of the word "procedure", which is defined as follows:

"Procedure is the machinery for carrying on the suit, including pleading, process, evidence and practice, whether in the trial court or the appellate court, or in the process by which causes are carried to appellate courts for review, or in laying the foundation for such review." *Jones v. Erie R. Co.,* 106 Ohio St. 408, 140 N.E. 366, 367.

Further:

"* * * including all possible steps in an action from its commencement to the execution of judgment." *Erwin v. U. S.,* D.C., 37 F. 470, 488, 2 L.R.A. 229; *Morewood v. Hollister,* 6 N.Y. 309.

We think the above language brings this situation within the spirit of *Yates v. State,* 18 Tenn. 549; and *Woods v. State,* 47 Tenn. 335.

The petition to rehear is accordingly overruled.

NEIL, CHIEF JUSTICE, not participating.