JUNIOR McAFEE and EUGENE McAFEE,
Plaintiffs in Error, v. STATE OF TENNESSEE,
Defendant in Error.

463 S.W.2d 141.

Court of Criminal Appeals of Tennessee. Dec. 21, 1970.

Certiorari Denied by Supreme Court Feb. 1, 1971.

G. P. Gaby, Greeneville, for plaintiffs in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, for defendant in error.

## OPINION

OLIVER, Judge.

Junior McAfee and Eugene McAfee, father and son respectively, indigent at the time of their trial and there represented by appointed counsel but represented here by retained counsel, were convicted in the Criminal Court of Greene County of second degree burglary and of grand larceny, upon a presentment charging, in the first count, that they burglarized the residence of Mr. and Mrs. Bill Crum with the intent to steal lawful U.S. currency and coin and, in the second count, with stealing such money in excess of $100 belonging to the Crums, and were sentenced to concurrent terms of three years upon each count. Unsuccessful in their motions for a new trial, they are now before this Court upon an appeal in the nature of a writ of error duly perfected.

A severance was granted to one Alvin Hensley, a codefendant jointly charged with the McAfees in the presentment, and he testified as a witness for the State in this case. The defendants' Assignments of Error challenge the sufficiency of the evidence to warrant and sustain the verdict of the jury, their specific insistence being that

they were convicted solely on the uncorroborated testimony of the accomplice Hensley.

The law is well settled in this State, and has been reiterated in numerous cases, that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such a verdict removes the presumption of the innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Cr.App., 425 S.W.2d 799; Brown v. State, Tenn.Cr.App., 441 S.W.2d 485.

To make one an accomplice, it must appear from the proof that he or she knowingly, voluntarily, and with common intent united with the principal offender in the commission of the crime. Moore v. State, Tenn.Cr.App., 432 S.W.2d 684.

The Supreme Court of this State has addressed itself many times to the question of the character and quality and quantum of evidence necessary to constitute legally sufficient corroboration of an accomplice. The rule, simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact es-

tablishing the defendant's identity. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; Boulton v. State, 214 Tenn. 94, 377 S.W.2d 936. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811.

In Binkley v. State, Tenn.Cr.App., 434 S.W.2d 336, Presiding Judge Walker wrote for this Court:

"Our Supreme Court has repeatedly held that slight circumstances may furnish the necessary corroboration of an accomplice's testimony. Alexander v. State, 190 Tenn. 260, 229 S.W.2d 331; Garton v. State, 206 Tenn. 79, 332 S.W.2d 169.

"In Stanley v. State, 189 Tenn. 110, 222 S.W.2d 384, the Court said:

'(1) The sufficiency of evidence required to corroborate an accomplice is well set forth in Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 217, as follows:

' "The degree of evidence which shall be deemed sufficient to corroborate the testimony of the accomplice is for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice."

'(2, 3) This Court has likewise held that rather

slight circumstances may be sufficient to furnish necessary corroboration. Winfree v. State, 174 Tenn. 72, 123 S.W.2d 827. The sufficiency of corroborating evidence where the testimony of an accomplice is in the main depended upon, depends upon the particular facts of each case. The weight of this testimony, that is, of the accomplice, corroborating the accomplice are ordinarily questions for the jury to determine. "That is to say, when the trial judge finds that there is some corroborative evidence, it is his duty to submit it to the jury for them to say, first, whether it is worthy of belief, and secondly, whether, if true it tended to connect the defendant with the commission of the crime charged. It is not necessary to show by independent proof a link between the accomplice's testimony and corroborative proof; when the proof claimed to be corroborative tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy a jury that the accomplice is telling the truth, it is sufficient. For this purpose, if the accomplice is corroborated as to some material fact or facts, the jury may from that infer that he speaks the truth as to all." Wharton's Criminal Evidence, Vol. 2, Section 754, page 1272.

'(4) It is not necessary that the corroboration extend to every part of the accomplice's evidence. The same authority last above quoted from says,

' "The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled,

when standing by itself, to but little consideration. Moreover, if the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence." Section 753, page 1271, supra.

\* \* \* \* \* \*

'(6) These proven facts certainly entitle the jury to draw reasonable inferences therefrom and this Court will not substitute its judgment or inferences from these proven facts, this being a function of the jury. Foster v. State, 180 Tenn. 164, 172 S.W.2d 1003.'

"The entire conduct of the accused may be looked to for the corroborating circumstances; and if, from those circumstances, the crime may fairly be inferred, the corroboration is sufficient. See 23 C.J.S. Criminal Law § 812(4)."

The opinion in Stanley v. State, supra, was quoted and reaffirmed in Williams v. State, 216 Tenn. 89, 390 S.W.2d 234.

■ Guided in our consideration of this case by the foregoing principles, we have carefully examined this record and now summarize briefly the material evidence obviously accredited by the jury. In the afternoon of June 27, 1968, while at his mother's home about a quarter of a mile from his own, Mr. Crum saw Eugene McAfee's Buick drive by his home three different times. His wife was at her employment. They left the doors unlocked when they were away in order that their son could get in when he returned home from school. When

Mr. and Mrs. Crum were preparing to retire that evening they discovered that a bedroom chest of drawers had been tampered with and items of clothing were disarranged and hanging out of one of the drawers. Investigation then disclosed that $250 in quarters and a one dollar bill had been stolen from the chest.

After these defendants were charged with this burglary, Eugene McAfee located Mr. Crum at this mother's home and said both of them got the money and he was willing to pay his part and asked him if there was any way he "could make it up." Crum said that could be done "if it was legal." Later Eugene McAfee asked Crum to talk the matter over with his (Eugene's) lawyer. Junior McAfee talked to Crum at the courthouse and said he had nothing to do with the burglary but was willing to make up his part of the money. Crum did talk to the District Attorney General and the Assistant District Attorney General about dropping the charges "if they could make it up."

Mrs. Crum testified that she talked with Eugene McAfee at the courthouse in the presence of Alvin Hensley and her husband, and that Eugene said he stayed in the car and didn't get all of the money but was willing to pay his part.

Alvin Hensley testified that the McAfees picked him up at his home about noon and they drove around until about 2:00 P.M. and then went to the Crums' house; that he and Junior McAfee went inside and took $42 in quarters and some pennies; that Eugene McAfee drove the car on down the road and came back and picked them up and they then divided the money; that his part

was $14; that they then drove three or four miles into North Carolina and exchanged the change for bills; that a constable told him that if he told the truth about this he would get out of it, and that is his understanding; that Leonard Laning owed him nothing and he did not ask the McAfees to take him to Laning's house.

Eugene McAfee testified that Hensley got in the car when they stopped at a store and rode to town with them; that Hensley told him that Leonard Laning owed him some money and asked them to take him to Laning's home and they did so; that Junior McAfee and Hensley got out of the car at the roadway leading to Laning's house, which is in the vicinity of the Crum home; that he left Junior looking at some junk cars and drove on down the road to look for his lost dog and returned later and picked up Junior and Hensley; that Hensley then asked them to drive him to the Cherokee Club located just across the State line in North Carolina, bought him some gas and two six-packs of beer in North Carolina, and then they took him home; that Crum told him $250 was missing and he agreed to pay his part of it to get the prosecution stopped; that he told Mrs. Crum he got none of the money but was willing to pay his part to get the warrants stopped; that Hensley told him about confessing to a constable and tried to get him to do so and said by so doing he could get out of it or get out on bail, and he refused "because I didn't do it"; and that he did not know anyone was breaking into the house and that he got none of the money.

Junior McAfee generally corroborated Eugene. He also said that Hensley disappeared behind Laning's house and was gone 35 to 40 minutes; that a round-trip walk

to the Crum home from there would take about 30 minutes; that Eugene returned and picked them up a few minutes after Hensley returned to where he was looking at the junk cars; that he asked Hensley if he got any money and he replied that he got enough to get some beer, and they then went across the State line to the Cherokee Club; that he did not steal the Crums' money and that Hensley gave him none; and that he tried to "pay it off."

The court charged the jury fully regarding corroboration of an accomplice's testimony. From the foregoing review of the evidence, the jury was obviously and fully justified in finding ample corroboration of Hensley's testimony. The conflicting evidence presented an issue of fact determinable exclusively by the jury. By its verdict the jury rejected the defendants' disclaimer of any knowledge of or participation in the burglary. As far as Eugene McAfee is concerned, there can be no doubt that the jury convicted him as an aider and abettor, as to which the court also correctly instructed the jury concerning the applicable law.

■ The trial court charged the jury that a person committing burglary and also stealing from the burglarized premises may be convicted for both. This is a misconception. It is error thus to pyramid punishment. A conviction for burglary bars a conviction for larceny committed in the burglarized premises at the same time and place. Cronan v. State, 113 Tenn. 539, 82 S.W. 477. See also Kaufman v. State, 189 Tenn. 315, 225 S.W.2d 75. Accordingly, referring their punishment to the highest grade of the offenses charged (T.C.A. §§

39-903, 39-4204), the defendants' convictions and sentences for larceny are disapproved and vacated.

As thus modified, the judgment of the trial court is affirmed.

DWYER, J., concurs.

ORIS D. HYDER, J., a member of this Court when this case was argued and submitted, did not participate in this opinion.