Faye SMITH, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 26, 1974.

Certiorari Denied by Supreme Court
June 16, 1975.

William J. Stricklin, Union City, Harry U. Scruggs, Sr., and Harry U. Scruggs, Jr., Memphis, for plaintiff-in-error.

David M. Pack, Atty. Gen., Robert E. Kendrick, Deputy Atty. Gen., Nashville, Fleming Hodges, Dist. Atty. Gen., Dyersburg, for defendant-in-error.

## OPINION

OLIVER, Judge.

This case is again before us pursuant to a delayed appeal in the nature of a writ of error granted by the trial court in compliance with an opinion of this Court filed April 6, 1973.

Represented in his trial and before this Court by retained counsel, Smith was convicted upon the third count of an indictment charging him with concealing or aiding in concealing four shotguns, of the aggregate value of more than $100, knowing them to have been stolen from the named owner "with the intent to convert the same to the use of the one so steal same and deprive the true owner thereof," and

was sentenced to three years in the penitentiary (T.C.A. § 39–4217).

In the first count of the indictment the defendant was charged with second degree burglary, and the second count charged him with stealing the four shotguns. After the jury was empaneled, the District Attorney General moved the Court for an order *nolle prosequi* as to the first and second counts of the indictment and to be permitted to proceed to trial on the third count, which the trial court granted. Apart from the jury, defense counsel moved for a mistrial and objected to going to trial on the third count of the indictment after the first and second counts were read to the jury and dismissed by the State. The first Assignment of Error complains of the trial court's action in overruling that defense motion. This Court overruled that Assignment in its opinion filed April 13, 1972 (cert. den. July 17, 1972).

In urging the usual contention that the evidence preponderates against the verdict of the jury and in favor of his innocence, the defendant insists the State did not prove he knew the guns were stolen nor that he had them in his possession with the intent to deprive the true owner of them. A related insistence presented by his second and third Assignments is that the trial court erred in ruling that prosecution witness Lloyd Hayes was not an accomplice and in declining to give his requested instruction that the uncorroborated testimony of an accomplice will not sustain a conviction.

We summarize the material evidence. Mrs. Foster Strader's Lake County home was burglarized on March 9, 1971 and four shotguns belonging to her, which she identified at the trial and said were worth more than $100, were stolen. About 3:10 a. m. on March 9th in adjoining Obion County, Union City police officers on patrol noticed an automobile with a defective muffler and followed it until it stopped in a driveway. The car was driven by Jimmy Tarver of

Tiptonville. The passengers were Jimmy Nance of Tiptonville and Bobby Gwynn who lived in Union City where the car stopped. Tiptonville is the county seat of Lake County. The guns were plainly visible in that car. However, after checking with area law enforcement agencies and finding no report of stolen guns, the men were not arrested.

A couple of days later, according to the testimony of Lloyd Hayes, the defendant sold him five guns (including the four stolen ones), for $200 (exhibit five). He gave the defendant a check, made out to cash, for the guns. He testified that the defendant told him he had gotten the guns from a man named Frederick; that the defendant's son Danny was his son-in-law and lived in a trailer behind his house; that he took Danny Smith's car and went and got the guns from the defendant and the next morning Danny took them out of the car and put them in his trailer home; that the defendant never told him the guns were stolen and he had no knowledge that they had been stolen; that the guns, which he bought from the defendant in Obion County, were worth more than $100; that on one or two previous occasions the defendant had cashed checks for him; and that he had been indicted for receiving and concealing the guns.

The police discovered the guns while they were in Danny Smith's house trailer investigating another matter. Hayes testified he told the officers the guns were his and that he had bought them from a man named Frederick. He also testified that at the Lake County preliminary hearing for Tarver, Nance and Gwynn on the burglary charge, he was present to identify Frederick; that when he saw those three defendants and realized he had never seen either of them before he asked the defendant which one of them was Frederick and the defendant replied, "Neither one of them"; that he then asked the defendant if the accused were the ones he bought the guns from and the defendant said, "Yeah"; that

the defendant told him to testify that he bought the guns from a man named Frederick and to stick to it, and that he so testified before the General Sessions Judge; and that he lied when he told the officers he bought the guns from a man named Frederick and also lied when he told the General Sessions Judge the same thing.

The defendant testified that he lived in Obion County and had operated a restaurant and tavern at Reelfoot Lake for about 12 years; that he did not sell the guns to Hayes and never talked to him about guns and had never seen these guns before, and knew nothing about them or any of the incidents involved until he went to Tiptonville to get his car license plates on the day of the above-mentioned preliminary hearing; that Hayes was there on that occasion but he did not talk to him about that case; that he just stuck his head inside the courtroom and did not see the defendants; that he cashed the check in question for Hayes at his place of business and had cashed checks for him before; that they are good friends and had been for a long time, and he would lend him $200 if he needed it and didn't want to write a check.

■ An accomplice is one who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime. *Hicks v. State*, 126 Tenn. 359, 149 S.W. 1055; *Monts v. State*, 214 Tenn. 171, 191, 379 S.W.2d 34; *Moore v. State*, 1 Tenn.Crim.App. 190, 432 S.W.2d 684; *McAfee v. State*, 3 Tenn.Crim. App. 424, 426, 463 S.W.2d 141; *Pennington v. State*, Tenn.Crim.App., 478 S.W.2d 892.

In *Ripley v. State*, 189 Tenn. 681, 687, 227 S.W.2d 26, the Court said this:

". . . By the great weight of authority, 'The question of who are accomplices is one of law for the court when the facts as to the witness' participation are clear and undisputed; when such facts are disputed or susceptible of different inferences, the question is one of fact for the

jury.' 22 C.J.S., Criminal Law, § 797, page 1348."

As the foregoing summary of the salient evidence demonstrates, this record contains no evidence that Hayes knowingly, voluntarily and with common intent united with this defendant in concealing or aided in the concealment of the guns in question. There is no evidence that when he bought the guns from the defendant Hayes had any knowledge or reason to suspect that they had been stolen, notwithstanding the fact that he lied to the officers and the General Sessions Judge when he told them he bought the guns from a man named Frederick—as the defendant had requested him to do.

◼ Thus, the trial judge correctly held that Hayes was not an accomplice of the defendant and properly declined his request to instruct the jury that the uncorroborated testimony of an accomplice is insufficient for a conviction.

◼ Tested by the rules governing appellate review of the evidence in criminal cases when its sufficiency is challenged on appeal, to which we must adhere, *Webster v. State*, 1 Tenn.Crim.App. 1, 425 S.W.2d 799; *McGill v. State*, 4 Tenn.Crim.App. 710, 475 S.W.2d 223, we cannot agree with the defendant that the evidence preponderated against the verdict of the jury and in favor of his innocence.

◼ Also groundless is the defendant's assignment that he was prejudiced and did not receive a fair trial because of the seating arrangement of the jury, which the trial judge stated in passing upon the motion for a new trial had existed for years, whereby the jurors were seated in swivel chairs immediately in front of the bench and with their backs toward the judge and with the witness box in front so that the witnesses faced the jury and the court. While it is unarguable that under such an arrangement or similar arrangement whereby the jury faces the courtroom audience the attention of jurors may be distracted by movements and occurrences in the audience, this defendant has not shown that the attention of the jurors was thus diverted so as to deny him a fair and impartial trial.

Moreover, as pointed out by the State in its brief, the defendant made no objection to the arrangement of the courtroom prior to or during his trial. In *Tennessee Oil Co. v. McCanless*, 178 Tenn. 683, 703, 157 S.W.2d 267, 162 S.W.2d 1081 (1941), the Court said: "A new trial will not be granted to enable a defendant to avail himself of the matter which he might have presented on the trial but raised for the first time on his motion for a new trial. *Heggie v. Hayes*, 141 Tenn. 219, 208 S.W. 605, 3 A.L.R. 150."

Affirmed.

WALKER, P. J., and RUSSELL, J., concur.