664

RHYNE *v.* LUNSFORD.

(*Knoxville,* September Term, 1953.)

Opinion filed December 11, 1953.

JENNINGS, O'NEIL & JARVIS, of Knoxville, for appellants.

CRAWFORD & HURD, of Newport, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a workmen's compensation case in which the Chancellor found that the employee, Allen G. Lunsford, (1) received an injury arising out of, and in the course of, his employment by Charles T. Rhyne, Sr., d/b/a Rhyne Lumber Company, and (2) that it was an injury to Lunsford's back resulting in a 75% permanent partial disability, and (3) for which Lunsford is entitled to compensation under those provisions of the Workmen's Compensation Act carried in the two last paragraphs of section 6878(c) of the Code Supplement.

A decree was entered in accordance with the findings stated. Motion for a new trial having been overruled, the employer has appealed. Logically considered, his first insistence is that Lunsford's employment was casual only; hence, so it is insisted, not compensable.

The employer is engaged in the lumber business. This includes the assembling and sawing, etc. of lumber. In order to facilitate this part of his business, employer decided to do certain construction work. This required the digging of a ditch about nine feet deep into which certain equipment or a platform of some kind was to be placed for the passage of lumber to the lumber saws. Among the several employees engaged in the digging of this ditch was appellee, Lunsford. It was while so engaged that he received the injury for which the Chancellor finds that he should be paid compensation.

Appellant's contention is that such construction work was not in the usual course of the appellant's business; that Lunsford had just been put to work the day he was injured for the *"primary"* purpose of helping as a laborer in this construction work. In considering the merits of this insistence it must be kept in mind that the rule upon which employer relies "is not to be extended to regular and general employees about a plant in connection with its usual business who happen to be at the time of the accident engaged, at the direction and under the supervision of the company's managers, on work of a repair or construction character". *Mashburn v. Ne-Hi Bottling Co.,* 191 Tenn. 135, 139-140, 229 S. W. (2d) 520, 232 S. W. (2d) 11.

Lunsford was employed on January 18, 1951 by Rhyne to work in Rhyne's regular lumber business. His employment continued regularly for a period of six to seven months as "a general laborer there at the plant". He "did anything there was to do in the mill", that a common laborer could do. Perhaps his principle work during this period was "tailing the cut off saw". At the end of this period he was laid off because of lack of business. The testimony of appellant is that "when we lay off a man we try to get him back, if we can".

Lunsford was called back to work on October 29, 1951 through the Tennessee Employment Bureau Chief in that county. It was at the request of Rhyne to furnish Rhyne a specified number of men, preferably old employees. When Lunsford reported to work he was directed to assist in the digging of this ditch, and it was while so doing three hours later that he received the injuries which resulted in this suit. Some of the employees who were assisting in digging this ditch were regular employees who had not been laid off. For instance, by the side of

Lunsford, and doing the same kind of work, was an employee named Edwards whose uninterrupted employment had been for a period of two years.

During Lunsford's six weeks of absence by reason of this injury he was paid $25 per week by reason of the injury. When he did return to work on December 10, 1951 he was put to work at the same laborer's task performed by him during the six months' period of employment commencing in January of that year. On the day he was digging the ditch he was under the supervision of that foreman of the Company who was "in charge of maintenance and repairs".

■ The foregoing evidence supports the Chancellor's finding that Lunsford was in the regular employ of the defendant, rather than a casual employee, at the time he received the aforesaid injury on October 29, 1951. Compare *U. S. Rubber Products Co. v. Cannon,* 172 Tenn. 665, 671-672, 113 S. W. (2d) 1184.

It is next insisted that the evidence did not justify the Chancellor in finding that the petitioner (1) suffered any disability, or (2) that the disability, if any, is as much as 75%. In substance, the contention of the employer is that Lunsford is malingering. That seems to be the opinion of two doctors called as witnesses by defendant.

Lunsford was in this ditch using a pick and shovel. About nine feet above was a wheelbarrow into which he was shoveling the dirt from the ditch as it was dug. In the course of raising a shovel of dirt, and when it had been lifted about two-thirds of the distance to the wheelbarrow, he felt a sharp pain in his back between, and at the top of, the hip blades. When he recovered from the first shock he climbed out of the ditch and informed the foreman of his injury. At noon he went home and had difficulty in getting to the house. Prior to this time this

thirty-six year old man had never had any trouble with his back. His work had always been that of a laborer or farmer. On the next morning he was driven by a neighbor to Dr. Valentine who treated, and thereafter examined, him several times.

On December 11, Dr. Valentine advised Lunsford that his recovery was sufficient for him to do "light" work. Thereupon Lunsford returned to Rhyne and was put back to the same labor as that which he was performing during the first six months of his employment. With the exception of intervening Christmas Holidays he continued at such work until January 24, 1952 when he was laid off, or stopped. His testimony is that he was subjected to much pain during all of this time by reason of this injury to his back.

During this period he was returning to Dr. Valentine at regular intervals. Hot packs were being applied. He wore a brace, and slept on a stiff board, all pursuant to the directions of the doctors.

Lunsford owns a small farm and, until he received this injury, tilled it. When in 1952 he undertook to plow or to chop with a hoe the pain was such that he had to quit, according to his testimony and that of his wife. He had to abandon the cultivation of his farm except in so far as he could rent it.

Dr. Valentine expressed the opinion that he may have suffered a "sacro-iliac strain" by the injury. He last examined Lunsford on August 13, 1952 previous to the commencement of this trial in September. He found that Lunsford still had "some spasm muscle" and some "pain on both sides when raising his leg and one could not be raised higher than ninety degrees" without causing considerable pain. The "x-ray revealed some bone pathology in the fourth lumbar". This is indicative of "osteo-

arthritis'' which, in the doctor's opinion, might have been caused by ''some trauma'' and that in his opinion, this arthritis, if it had existed prior to the October 29 injury, could have been aggravated by that injury. The opinion of that doctor from the last examination of Lunsford is that he is able to do only general work of a light nature.

Dr. Mims examined Lunsford two weeks before the trial. X-rays of his back showed ''bony changes'' in the 4th lumbar and also ''about the 12th thoracic spinal vertebra''. This condition, in the opinion of Dr. Mims, could have been caused by an injury, or had this condition existed prior to the injury, its condition could have been aggravated by the injury. When asked ''what is the condition of his back now'', he replied ''injury still there, the results of it. Some lipping and damage to along about the 4th lumbar vertebra, and another about the 12th thoracic''. He expresses the opinion that Lunsford ''could do light labor''.

Doctors Bagwell and Brashear were called as witnesses by the employer, Rhyne. They are Orthopedic Surgeons, operating a clinic at Knoxville. Dr. Valentine sent Lunsford to these doctors on November 20, 1951.

On that occasion Dr. Bagwell found ''some evidence of low back trouble'' manifested by ''muscle spasm''. From his examination of the x-rays taken at the Valentine clinic the patient was normal except an ''old hypo-throphic spur'' in the ''4th lumbar vertebra''. These doctors concluded that he was suffering from low back strain and recommended the treatments, etc. heretofore stated. It is their opinion that this ''spur'' which is a deposit of calcium attached to the bone could not have been caused by the October 29, 1951 injury. One of these two doctors thought that he was suffering from arthritis,

a condition not caused, in their opinion, by the October 29 injury. No evidence of a ruptured disc was observed.

It was the opinion of Dr. Brashear on December 29, 1951 that patient ''should refrain from hard labor''. He again entered on his record as late as April 15, 1952 that ''patient has some symptoms in his low back'', and ''motion is limited slightly in all planes—that is with reference to the low back''. He expressed the opinion, however, that the patient was largely ''faking'' or ''exaggerating'' his condition. Both these doctors thought that he was able to do any work he had ever been able to do and that there was nothing in his condition, in their opinion, that was caused ·by the injury received on October 29.

■ The above stated evidence leads naturally to the conclusion that Lunsford's present physical condition is due to the back injury received on October 29, 1951. It may be, and the preponderance of the evidence is, that neither the ''spur'' condition disclosed by the x-ray pictures, nor the arthritis, was originally caused by this injury of October 29. But if that injury aggravated a pre-existing injury or disease, the disability is nevertheless compensable. *Johnson* v. *Anderson,* 188 Tenn. 194, 200, 217 S. W. (2d) 939.

■ In connection with that just stated, the undisputed evidence is that this man had suffered no pain whatever with his back prior to that time. Nor had he been handicapped in the slightest in the performance of the only work he could do, physical labor. All the doctors agree that from the time of that injury until as late as April 15 of the following year his back disclosed effects of the injury by way of spasms, etc. It is not reasonable to conclude that his present condition is not connected with the injury in question. Aside from this, the experts who were

called as witnesses by the defendant concede that there are back injuries which an x-ray will not disclose. These two experts may or may not be correct in their conclusion that Lunsford is "faking". However, the evidence in this record does not permit such a finding.

■ It is next insisted that there is no evidence to justify the Chancellor's conclusion that the disability amounts to 75%. There is no scientific formula by which the actual extent of disability may be measured with satisfactory assurance of accuracy. The record does disclose that the disability was to such an extent that Lunsford could not plow or chop with a hoe. It is common knowledge that these two farm tasks may be done, and regularly are, by boys in their early teens.

If Lunsford could not so much as chop with a hoe because of this back injury it would seem to follow that he is 75% disabled in so far as general physical labor is concerned. The Chancellor who observed the man during the trial so thought. The record furnishes this Court no justification for concluding that the Chancellor's judgment is wrong as to this matter which must be determined without the aid of mathematics rules.

The petition filed by employee Lunsford, alleges that "he sustained a ruptured disc in his spinal column". The employer insists that there is no evidence of such an injury. Therefore says the employer, it became the duty of the Chancellor to dismiss the petition on the ground that there is a "material variance".

■ Perhaps the merits of this insistence, considered in the light of other allegations of the petition, can be the more surely ascertained by first restating those elementary rules of pleading applicable in Workmen's Compensation cases. In such cases technicalities are ignored and the question is viewed liberally from the standpoint of

the employee. *Ledford* v. *Miller Bros. Co.,* 194 Tenn. 467, 253 S. W. (2d) 552. Such petitions as to "the nature of the injuries are not required to be as definite as in common-law cases." *Tipton* v. *North American Rayon Corp.,* 181 Tenn. 434, 438, 181 S. W. (2d) 619, 620. They seem to be sufficient if they state "the nature of the injury so as to advise the employer of the nature of the claim and enable him to prepare to meet it." *Phillips* v. *Diamond Coal Mining Co.,* 175 Tenn. 191, 195, 133 S. W. (2d) 476, 477.

An examination of the petition in this case for the purpose of determining whether it comes within the above stated rules discloses that its allegations as to the injury are not confined to the meager statement that Lunsford "sustained a ruptured disc in his spinal column". This petition alleges that while Lunsford was shoveling dirt in a ditch nine feet deep and placing it in a wheelbarrow two feet above his head "he felt a sharp, stinging sensation in his back, accompanied by excruciating pain, and was unable to straighten up for a few minutes * * * being unable to work petitioner went to his home at the lunch hour and was in such condition when he arrived there that his wife had to practically drag him into the house".

Fairly construed, and "liberally from the standpoint of the employee", the foregoing allegations advised the employer that the employee is claiming compensation for a back injury which has been diagnosed as a ruptured disc.

In considering whether this allegation was sufficient to advise employer, Rhyne, as to "the nature of the claim and enable him to prepare to meet it" there should be noted the fact that it is not important to the employer whether the back injury results from a ruptured disc or

for some other reason. This is true because this back injury belongs to that class of cases in which the amount of compensation is based upon the incapacity to work as before because of such injury. Last paragraph of Code Section 6878(c). There is no compensation fixed by the statute for a ruptured disc.

A case which seems to be in point, on principle, is reported in Volume 3 of the Supplement to Schneider's Workmen's Compensation Law, Section 551, page 243, as follows:

"Before the Texas Industrial Accident Board the claimant based his claim on an injury to his leg and spine. In the suit to set aside the award, he claimed compensation for an injury to the sacro-iliac joint in addition to the injuries to the leg and spine. It was held that the employee could enlarge his claim as he did, because his injuries belonged to that class where the amount of compensation was based upon incapacity to work or labor resulting therefrom, and did not fall within the class of specific injuries where the amount of compensation was based upon the nature of the injuries. *Indemnity Ins. Co. of North America* v. *Harris,* Tex. Civ. App., 1932, 53 S. W. (2d) 631."

The decree of the Chancellor will be affirmed with costs adjudged against the appellant, Rhyne. The cause will be remanded.