M. L. Underwood

*v.*

Combustion Engineering, Inc.

*(Knoxville,* September Term, 1956)

Opinion filed February 8, 1957.

Rehearing Denied April 1, 1957.

Wood & Wood, Chattanooga, for petitioner (defendant in error).

Campbell & Campbell, Chattanooga, for respondent (plaintiff in error).

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a workmen's compensation case in which the trial court awarded compensation on the theory that the employee was totally and permanently disabled due to an occupational disease on October 12, 1954, and entitled to recover $28 per week from October 19, 1954, until the sum of $8,500 is paid.

The original bill charged that the complainant suffers from "chemical poisoning" which resulted in painful dermatitis with ulcerations in his lower left leg; also resulting in pain in the small of the back. It is the further charge that as a result of this chemical poisoning he has a greatly impaired circulatory system. The petition charges further:

"On August 23, 1954, while petitioner was employed by the defendant, and working in the course of employment in Chattanooga, Tennessee, petitioner requested defendant to furnish him with medical treatment as his left leg was beginning to cause him intense pain due to his having to stand on and throw his weight on his weakened ankle. Defendant refused to furnish him with medical attention and petitioner was forced to go to a doctor of his own choice and at his own expense. Petitioner was treated on that day and at other times subsequent to that by Kenneth M. Gould, M.D. Petitioner's physical condition continued to get worse and by reason of his work and by reason of the diseased condition of his left leg and other ailments as heretofore described, all being received or contracted in the course of his employment, he became unable to work and is now totally disabled."

The respondent answered the bill and denied all charges and especially urged that the petitioner had not contracted an occupational disease and that he was not suffering from such a disease; that his disabilities resulted from an injury which did not arise out of and in the course of his employment and that the complainant's cause of action is barred by the statute of limitations. There is this further defense, that no notice was given to the defendant such as the law requires.

The Chancellor filed a full and complete finding of fact upon which he based his decree. His finding will be later referred to in this opinion.

From the Chancellor's decree the defendant has appealed and has filed 40 assignments of error, most of them relating to the Chancellor's finding of fact and his

conclusion based upon such finding. A number are argumentative as to the proper legal conclusion to be drawn from the evidence in the case.

█ We think the evidence sustains the Chancellor's finding that Mr. Underwood was disabled due to the fact that he had an occupational disease which arose out of and in the course of his employment.

The chief defense to this suit, and which has given the Court the greatest concern, is that the petitioner's cause of action is barred by the statute of limitations. While there is evidence that the petitioner had been treated for abrasions on his hands and arms and lower limbs in 1951 and possibly later, there is material evidence to sustain the Chancellor's finding that his disability resulted from chemical poisoning in 1954.

Collateral to the foregoing defense of the statute of limitations and that the petitioner's injury is not an occupational disease, the defendant charges that it is the result of "poison-ivy" or "sumac" which he contracted while working in his garden and that later he scraped his left leg on an angle iron causing an abrased area about the size of a silver dollar which resulted in a swelling and discoloration of the area. This was in July, 1951, at which time he was treated by a Dr. Ebert for this inflammatory condition. On August 31, 1951, he was treated by Dr. Marchbanks, a dermatologist, for an acute inflammatory condition of the left leg. His finding was that Mr. Underwood at that time had a combination of phlebitis and dermatitis. This trouble seems to have improved in September and Mr. Underwood was able to return to work on about September 17, 1951. In November, 1951, according to Dr. Wood, Underwood's left leg

was swollen, bluish veins apparent and there were indications of thrombo-phlebitis and poor circulation. Dr. Wood continued to treat him for some time thereafter.

The petitioner's case rests upon the sufficiency of the evidence to establish the fact (1) that his physical ailment or disability is the result of an occupational disease and that he has become totally and permanently disabled; (2) that his petition was filed within one year after he became disabled and thereby unable to follow any gainful occupation. The question of notice also is involved in the petitioner's right to recover.

While the defendant has filed 40 separate assignments of error, counsel admits on page 19 of his brief that these assignments separately and collectively raise only the following questions: "1. The Statute of Limitations. 2. Does Underwood have an occupational Disease, and 3. Notice to the Employer."

It is important and essential to a fair consideration of the issues to refer to the Chancellor's finding of facts, as follows:

"Petitioner was in good health when hired in 1947. His job required him to handle angle irons while working on a foot punch press that punched or drilled holes through the iron. About one-fifth of each working day was spent in standing on the left leg while using the right leg in operating the press. He worked on the same job during the entire period of his employment. The iron that he worked with was coated with a rust preventive compound. While in defendant's employ, he first came down with dermatitis about June 15, 1950,

which lasted five weeks and two days. * * * Dr. Shaw, testifying for the defendant, gave a history of occupational dermatitis.''

■ We have heretofore referred to a previous leg injury which was treated by Dr. Ebert and Dr. Marchbanks during the year 1951. The Chancellor says that the injury treated at that time was in the area found to exist in 1954 when suit was first instituted. The controlling question before this Court, as it was before the Chancellor, is the date when this injury resulted in the petitioner's disability as well as the nature of the injury and whether or not it was an occupational disease. The Chancellor found the date of his disability to be ''October 12, 1954''. He further found: ''Up to that time he had a good record for steady employment.'' Continuing his finding of fact:

''Petitioner has mild varicose veins and impaired circulation associated with the old ulcer, which coupled with the nature of his work, caused petitioner to suffer a new attack in the area of the former injury. The circulatory impairment had a tendency to create a condition that made the petitioner more susceptible to becoming reinfected. Petitioner is not trained in any of the crafts and possesses no skill or special training for any type of work that can be done from a sitting position. Defendant has no work of this type it can offer petitioner. There was no new injury in August of 1954, nor was the employee (subject) to any new or increased hazard, other than the hazard of becoming infected with dermatitis through the handling of the steel that was coated with a rust preventive or particles thereof that might get in the air.

"For the aggravation of the injury of 1951 there can be no recovery. The Court is required to give a just and liberal interpretation to the Compensation Act, and presumptions of injury should be resolved in favor of the employee rather than against him. *Milstead v. Kaylor,* 186 Tenn. 642, 212 S.W.2d 610."

While the evidence is conflicting as to whether or not the injury is compensable we concur with the Chancellor that it is such an injury, viewing the facts with due and reasonable liberality. The evidence shows that the petitioner had suffered from the old injury, to which we have made special reference, for three years prior to 1954. We think it is quite clear from the evidence that his employer had notice of this prior disability. The plea of the statute of limitations to the old injury of 1951 could be sustained and the Chancellor held that it was well taken. But what about the injury which the Chancellor found to have occurred in the year 1954? In passing upon this issue the Chancellor expressed his opinion as follows:

"However, the employer takes the workman as he is and assumes the risk of having a physical weakness or impairment aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of the disability and aggravates a previously weakened condition or accelerates death, then the employer is liable. *Swift & Co. v. Howard,* 186 Tenn., 584, 212 S.W.2d 388. *Heron v. Girdley* (198 Tenn. 110), 277 S.W.2d 402. Petitioner's susceptibility to infection exposed him to the occupational disease of dermatitis to a greater extent than a perfectly normal, healthy person would have been. Defendant knew of this tendency in 1950 and

again in 1951 and continued to employ him on the same job. In the case of *Workman v. General Shoe Corp.* [196 Tenn. 290], 265 S.W.2d 883, the employee suffered an injury June 15, 1949, which developed phlebitis in the left leg, and on December 14, 1951, as a result of the left leg giving way, she fell and sustained further injuries. In overruling a demurrer, the Court held that, if petitioner had a second accident on December 14, 1951, from which she received injuries independent of the accident of June 15, 1949, the statute of limitations would begin to run from the date of the second accident. It was pointed out,

" 'It matters not whether the leg was weakened by phlebitis as a result of a prior injury arising out of and in the course of her employment. The important fact is that the phlebitis did exist."

As further supporting authority he cites the following cases: *Rhyne v. Lunsford,* 195 Tenn. 664, 263 S.W.2d 511; *Davis v. Wabash Screen Door Co.,* 185 Tenn. 169, 204 S.W.2d 87; *Holeproof Hosiery Co. v. Wilkins,* 194 Tenn. 683, 254 S.W.2d 973; and *Wilson v. Van Buren County,* 196 Tenn. 487, 268 S.W.2d 363.

We think the Chancellor's finding of fact and his conclusion are fully sustained by the record. We are furthermore constrained to concur in his holding that the defendant is liable based upon the authorities cited.

Thus in the *Holeproof Hosiery case, supra,* [194 Tenn. 683, 254 S.W.2d 974] it is said:

"The statute is not tolled as of the date of the commencing of the disease, for that would be impossible to determine with any degree of accuracy, but is tolled

at the beginning of 'incapacity for work'. * * * the Legislature did not intend to burden the injured employee with the duty of proving when a compensable injury 'commenced' for in many cases no one could say when his right of action actually accrued, i. e. his 'incapacity for work'.''

The foregoing statement by the Court was cited and reaffirmed in *Wilson v. Van Buren County, supra.*

In the case at bar the petitioner continued to work after the old injury became infected by chemical poisoning, the latter injury being compensable as an occupational disease. However, under the foregoing authorities the statute of limitations was not tolled until the said injury resulted in the petitioner's disability and was for this reason unable to carry on his usual vocation.

We have given full consideration to the authorities cited by defendant's counsel and the argument that the petitioner had full knowledge of the fact that he was disabled from an occupational disease, but we think the cases cited in the Chancellor's opinion, and to which we have made special reference, are controlling. Moreover the evidence clearly shows that responsible agents of the employer knew of Mr. Underwood's condition as far back as 1951. Notwithstanding this knowledge the company continued his employment until he became totally and permanently disabled from engaging in any gainful occupation.

The assignments of error are overruled, and the Chancellor's decree is affirmed. The cause is remanded to the Chancery Court of Hamilton County for the enforcement of the Court's decree.