The American Surety Company, Respondent,

*v.*

C. C. Kizer, Petitioner.

369 S. W. 2d 736.

(*Knoxville,* September Term, 1962.)

Opinion filed July 15, 1963.

WILLIAM S. TODD and TODD & DOSSETT, Kingsport, for petitioner.

WINFIELD B. HALE, JR., and PHILLIPS & HALE, Rogersville, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a Workmen's Compensation case in which the sole question is the extent of disability sustained by the defendant in error. The Trial Judge made an award of total temporary disability benefits for a period of 25 weeks and awarded benefits for 80% permanent partial disability to the body as a whole and medical expenses of $1,800.00.

The plaintiff in error has appealed from this award and assigned errors which question the extent of the defendant in error's disability. For convenience, hereinafter the parties will be referred to according to their status in the Trial Court.

In January 1961 the petitioner was principal of the New Canton Elementary School in Hawkins County, Tennessee, and a teacher in that school. The school building was a frame building with three class rooms. The defendant was the Workmen's Compensation carrier for the Hawkins County School Board. On January 23, 1961 the school building caught fire underneath the floor of the building. After getting the children out of the building the petitioner got some of the older boys to bring water to fight the fire and petitioner cut a hole through the floor and went underneath the building to fight the fire. He was an obese man then 60 years of age. There was barely room between the ground and the floor joists for him to crawl under the building. When the boys poured water on the fire the resulting steam enveloped petitioner's face and he testified he tried to jump back and in so doing he got caught on the joists and injured his back.

The petitioner testified that prior to this occasion he had never had any trouble with his back or spine. He further stated that the night of the fire he suffered with his back all night, that he went to school the next day but finally had to leave the school that next day and consult a doctor. After three visits to this doctor he went to a chiropractor for several weeks but failed to make any improvement. He then went to Dr. William C. Eversole, in Kingsport, who put him in a hospital in Kingsport from February 20, 1961 to March 8, 1961. After this

period of hospitalization he attempted to return to his job as principal and teacher in the school. He stated he was "trying to make it until school was out" but was in constant pain and could barely get about.

In May 1961 he consulted Dr. Frank B. O'Connell, a neurosurgeon in Kingsport. He was placed in the hospital in Kingsport May 31, 1961 for a myelogram. According to the testimony of Dr. O'Connell, this myelogram showed a large bilateral defect at the level of the third and fourth lumbar interspaces. While in the hospital he had old hernias repaired and was discharged from the hospital June 22, 1961. At the trial in December 1962 petitioner testified he had never walked normally since the accident.

On August 1961 petitioner returned to the hospital and Dr. O'Connell performed a laminectomy. He attempted to return to his work as a school teacher in mid-November 1961. In January 1962 he went to a hospital at the University of Virginia, in Charlottesville, and was confined in the hospital there from January 17, 1962 to February 3, 1962.

When asked to describe the condition of his back and legs from February 1962 to the time of the trial in December 1962, he testified:

"It's been bad. I haven't been able to use it and I can't get around, can't walk to do any good, can't balance myself, can't do any of my duties as far as work and things around the house, even to hanging a picture and things of that nature I can't do it, get up in a chair I can't even do that, as much as stand up in a chair to do work like that."

Petitioner testified that at the end of the 1962 school

year he had taught in the public schools of Tennessee for 29 years, that the Hawkins County School Board sought to force him to retire and that he refused to retire prior to attaining thirty years service and was allowed to remain as a teacher only after he threatened to sue the School Board. He was retained as a teacher of first and second grade children but his duties as principal were taken from him and his pay was reduced. During the · fall of 1962 petitioner did not miss a single day from school. He had to continue using a cane to walk and could not stand over twenty-five to thirty minutes without his back hurting and his legs giving away. He testified he could not perform all the duties of teaching but was trying to finish out the school year before retiring.

Prior to the happening of the accident, petitioner did construction work during the summer vacation and in his spare time to supplement his earnings as a school teacher. In 1960 he constructed a funeral home for one Horace · Curry in Kingsport. The owner of this funeral home testified that prior to the accident petitioner was an active man, engaging in heavy physical labor doing various types of construction work. He further testified that since the accident petitioner can barely get around walking with a cane.

Petitioner's wife also testified that prior to the accident he was a hardworking active man and that from the time of the accident to the time of the trial, a period of some 23 months, he has been able to get about only with the use of a cane and has not been able to perform any chores about the house.

The only medical testimony introduced is the deposition of Dr. Frank B. O'Connell, who testified that prior

to the accident the petitioner had gout and osteo-arthritis. As to the causal connection between the accident and petitioner's disability, Dr. O'Connell testified:

"Well, the basic pathology preceded the trauma but there's certainly no reason to feel that the trauma did not have a precipitating factor in the appearance of the symptoms."

＊ ＊ ＊ ＊ ＊ ＊

"The wrenching of his back caused some bulging of the disc to occur, which was enough to precipitate symptoms because of the pre-existing hypertrophy lamina."

In his original deposition, this doctor rated petitioner's permanent partial disability referrable to his back at 20%. A supplemental deposition of this same doctor was taken in which the doctor testified that his opinion of 20% permanent partial disability was based upon his knowledge of petitioner's job as a principal or teacher in school. The doctor, in this supplemental deposition, further testified:

"Well, as far as doing real heavy labor, such as would be involved in brick laying or block laying or something like that, I don't think he could or should do that type of work at all. If his disability is confined to that specific type of work alone it would be pretty close to a hundred percent disability."

Petitioner had testified that he earned from $1,400.00 to $1,600.00 per year working as a bricklayer and in other construction work during vacation periods from school and that since the accident he has been unable to do any of this work.

The defendant did not offer any proof in this case but

rested its case when the petitioner rested his case. Counsel for the defendant, in his able brief, recognizes:

"It is well-settled that in workmen's compensation cases, findings of the lower court supported by any material evidence will not be disturbed on appeal".

The question for determination by this Court is whether or not the evidence hereinabove summarized constitutes material evidence that the petitioner has sustained a permanent partial disability of 80% of the body as a whole as a result of the accidental injury arising out of and in the course of his employment.

■ It is well settled in Tennessee that the employer takes the employee as he finds him. This Court, speaking through Mr. Chief Justice Burnett in *Swift & Co. v. Howard,* 186 Tenn. 584, 591, 212 S.W.2d 388, 391, stated:

"When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of the disability, i. e., excites and aggravates a previous weakened condition then the employer is liable."

This rule has been followed in *Underwood v. Combustion Engineering Co. Inc.,* 201 Tenn. 519, 300 S.W.2d 901; *Eslinger v. Miller Bros. Co.,* 203 Tenn. 688, 315 S.W.2d 261; *Coleman v. Coker,* 204 Tenn. 310, 321 S.W.2d 540; *Bowling v. Whitley,* 208 Tenn. 657, 348 S.W.2d 310, and other cases.

■ Disability resulting from the aggravation of a preexisting disease or condition is compensable. *Johnson* v.

*Anderson,* 188 Tenn. 194, 217 S.W.2d 939, *Rhyne v. Lunsford,* 195 Tenn. 664, 263 S.W.2d 511.

■ The fact that petitioner's earnings as a school teacher at the time of the trial had not been greatly reduced from what he was making as a teacher before the accident does not necessarily mean that his disability is slight. As stated in *Greenville Cabinet Co. v. Ramsey,* 195 Tenn. 409, 416, 260 S.W.2d 157, 160:

> "The test is whether or not there has been a decrease in petitioner's capacity to earn wages in any line of work available to the petitioner".

In *McKenzie v. Campbell and Dann Manufacturing Co.,* 209 Tenn. 475, 482, 354 S.W.2d 440, 443, this Court expressly reaffirmed the above quoted rule from *Greenville Cabinet Co., v. Ramsey,* supra, in the following language:

> "The Chancellor found that the petitioner had suffered a fifty (50%) percent permanent partial disability to the body as a whole. There was proof in the record that the petitioner was earning as much or more at the time of the hearing of this cause as he had been earning at the date of his injury. The question, however, is not what the petitioner happened to have been earning at the time of the trial of this cause, but what he is able to earn in his disabled condition on the open labor market".

The injury in *Greenville Cabinet Co. v. Ramsey,* supra, occurred prior to the enactment of Chapter 111, Public Acts of 1953 by Section 2 of which "the body as a whole is given a specific value in weeks in the same manner that a value in weeks is given in the schedule to the various members of the body." *Hooper v. Young Sales Corp.,* 199 Tenn. 629, 635, 288 S.W.2d 703, 705.

This 1953 Amendment to the Workmen's Compensation Act, which is found in the last paragraph of T.C.A. sec. 50-1007(c), "had the effect of placing permanent partial loss of the use of the body in the schedule wherein specific amounts are fixed for the whole or partial loss of a given member of the body, or of its use, and without regard to the effect of such loss upon the subsequent earning power of the injured employee." *Bituminous Casualty Corporation v. Smith,* 200 Tenn. 13, 18-19, 288 S.W.2d 913, 916; *United States Fidelity and Guaranty Co. v. Townsend,* 206 Tenn. 592, 595, 335 S.W.2d 830, 831.

■ The Trial Judge not only heard the medical and lay testimony as to the condition of the petitioner but also saw and observed the petitioner at the trial. It has long been recognized that a lay witness may testify as to his own physical condition or that of another person provided such witness first states the detailed facts and then gives his conclusions. *Norton v. Moore,* 40 Tenn. 486; *Hamlin & Allman Iron Works v. Jones,* 200 Tenn. 242, 246, 292 S.W.2d 27, 29.

■ Applying the foregoing rules to the testimony summarized and quoted hereinabove, it is clear that there is material evidence in this record that the accidental injury of January 23, 1961 aggravated the petitioner's pre-existing arthritic condition and caused petitioner's disability. The testimony of Dr. O'Connell quoted above affords ample evidence of the causal connection between the petitioner's accidental injury and his subsequent disability.

In view of the lay and medical evidence in the record, the finding of the Trial Judge that petitioner has a compensable permanent partial disability to the body as a

whole of 80% is supported by material competent evidence.

The petitioner testified that he lost a total of thirty-one weeks from his work during the time he was hospitalized or confined to his house because of his injury. This testimony is not in any way contradicted. It affords substantial evidence to support the award of twenty-five weeks total temporary disability benefits.

The petitioner exhibited doctors' bills, hospital bills and drug bills incurred by him within one year following the accident in the amount of $2,095.45. Additional medical expenses were incurred by petitioner more than one year following his accident. The allowance of the maximum of $1,800.00 for medical expense as provided in T.C.A. sec. 50-1004 was justified in this case.

The assignments of error are overruled and the judgment of the Trial Court is affirmed.