IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**WORTHER WILLIAMS,**

    Plaintiff-Appellee,

Vs.

**ROBERT W. STEWARD,**

    Defedant-Appellant.

Shelby Circuit No. 61390 T.D.
No. 02A01-9712-CV-00311

FILED

**July 22, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE JAMES E. SWEARENGEN, JUDGE

Andrew Hume Owens of Memphis
For Defendant-Appellant

Marvin S. Bernatsky of Memphis
For Plaintiff-Appellee

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is an automobile personal injury case. Defendant Robert W. Steward appeals the

judgment of the trial court on a jury verdict for plaintiff, Worther Williams.

During the evening rush hour, on May 11, 1993, Williams was traveling northbound on

Sycamore View Road in the inside lane, intending to turn left onto Summer Avenue. Sycamore View has three northbound lanes, three southbound lanes, and a center, two-way, turn lane. Traffic was backed up from the intersection in the normal lanes of travel, so plaintiff entered the center turn lane over 500 feet from the intersection and proceeded northbound. Meanwhile, Steward pulled from a private driveway on the east side of Sycamore View proceeding west and intending to turn and proceed south. Steward crossed the three northbound lanes of traffic through a gap between cars stopped for the traffic light and the parties' vehicles collided in the center turn lane approximately 500 feet from the intersection. The front-end of plaintiff's 1972 Chevy Chevelle was severely damaged, but due to the age of the vehicle, damage was estimated to be only $500.00.

Mike Richardson, the Police Service Technician who arrived on the scene to investigate the accident, testified that plaintiff made no complaint of injury at that time. Both vehicles were towed from the scene, with plaintiff getting a ride home with the wrecker driver. Later that evening, plaintiff began experiencing pain in his right shoulder and lower arm and was taken by his wife to the emergency room at Baptist East Hospital. After x-rays were taken, plaintiff was given medication for treatment of a "right shoulder contusion" and released with instructions to see his family physician.

Plaintiff was seen two days later by his family physician, Dr. Castellaw, who provided medication for right shoulder pain and a "left knee bruise." Plaintiff was then referred to a specialist, Dr. Lynch, whose records[1] indicate that plaintiff complained of continued pain in the right shoulder and a sensation of weakness in the shoulder joint. Physical examination revealed the following: "Patient has full active and passive motion with the right shoulder with pain in all directions and significant weakness in external rotation. He has no significant pseudocromial creptis. No tenderness on palpating about the rotator cuff or any other abnormal findings on examination. X-rays of the shoulder are negative." Approximately two weeks later, plaintiff returned for a follow-up visit with Dr. Lynch. Dr. Lynch noted that plaintiff "has gotten almost complete relief of his shoulder pain, has excellent strength in his rotator cuff and abductors and has regained near normal function of his shoulder." Plaintiff was allowed to return to work at

---

[1] There was no testimony from any medical witness. The parties by agreement read the office records of the treating physician in lieu of his testimony.

2

that point, but records indicate that plaintiff sought treatment for continued shoulder pain on at least two occasions during the following year.

At trial, in September 1997, plaintiff claimed that he still had pain in his shoulder, but admitted that there was nothing he could not do now that he could do before the accident. Plaintiff's wife, however, testified, over objection, that plaintiff could no longer do mechanical work on her car, or do certain things around the house. Plaintiff introduced evidence of medical bills totaling $924.00, $500.00 in property damage, and lost wages of $2,213.75. The jury returned a verdict finding that plaintiff had sustained $35,000.00 in damages, but that he was also 10% negligent. After reduction for the portion of damages attributable to plaintiff's negligence, plaintiff was awarded $31,500.00.

Defendant Robert Steward appeals the judgment of the trial court on the jury verdict for plaintiff and has enumerated eleven issues for review. Appellant prays that a new trial be granted, or, in the alternative, for remittitur. We have summarized appellant's issues as follows:

> 1. Whether the trial court erred in allowing wife to testify about husband's impairment when there was no medical proof of such.
>
> 2. Whether the trial court erred in failing to instruct the jury that there was no medical proof sufficient to allow an award for future pain and suffering or future medical bills.
>
> 3. Whether the trial court erred in rejecting defendant's requested jury instructions on the Tennessee statutes regarding improper turns and no-passing zones.
>
> 4. Whether the trial court committed prejudicial error when explaining the concept of comparative fault by using a damage figure of $100,000.00 in its example, possibly leading the jury to believe that number was "in the ballpark."
>
> 5. Whether the verdict was supported by the evidence, or was the result of the passion, prejudice, or caprice of the jury.
>
> 6. Should any of the above not independently constitute error sufficient to justify granting defendant a new trial, does their cumulative effect warrant a new trial?

We will address appellant's issues, as modified, in the order presented above.

> 1. Whether the trial court erred in allowing wife to testify about husband's impairment when there was no medical proof of such.

Appellant asserts that the trial court wrongly allowed plaintiff's wife to render "what was tantamount to a medical opinion" in response to a question from plaintiff's counsel. We quote the exchange complained of in its entirety:

MR. BERNATSKY [plaintiff's counsel]: Are there things that he can't do now that he did before?

MR. OWENS [defendant's counsel]: Objection. Competency what he can or can't do, that's beyond her capacity.

THE COURT: I don't know. I'll overrule that.

MRS. WILLIAMS: Yes. There's things then he could do that he cannot do them now, and as like, he was a mechanic and stuff that he done on my car a whole lot, and also like working around in the house.

MR. BERNATSKY: Are there limitations on things he can pick up?

A. Yes.

Perhaps plaintiff's counsel could have laid a better foundation for the question, but that was not the basis for the objection. It is well settled that a lay witness can testify to the physical condition of another person provided that the witness firsts states the detailed facts and then gives her opinion or conclusion. *American Surety Co. v. Kizer*, 212 Tenn. 328, 369 S.W.2d 736 (1963). In the instant case, plaintiff's wife testified about her husband's condition after the accident, discussed the treatment she observed him receive, stated that there were good days and bad days and that she would often wake up at night to find him rubbing his shoulder. Her conclusion that her husband cannot do everything that he could do before the accident was based on her daily observations of him. In any event, the credibility of the witness's observations and conclusions goes to the weight to be given the testimony by the trier of fact, and not to its admissibility. It is for the trier of fact to determine whether the witness has stated any material facts that justify the witness's conclusion. *Hamlin & Allman Iron Works v. Jones*, 200 Tenn. 242, 292 S.W.2d 27, 30 (1956). This issue is without merit.

2. Whether the trial court erred in failing to instruct the jury that there was no medical proof sufficient to allow an award for future pain and suffering or future medical bills.

During closing arguments, defense counsel objected to a statement made by plaintiff's counsel that plaintiff would "have the rest of his life to suffer with his arm." Defense counsel argued that this statement was improper because there had been no competent proof of permanent impairment. The trial court apparently agreed, stating: "We don't have medical proof to that effect. All right." Appellant asserts that the trial court's statement was ambiguous and that he was entitled to have his objection properly sustained. In an attempt to cure the claimed

4

error, counsel submitted a hand-written jury instruction to the effect that the jury could not consider an award for future pain and suffering or future medical bills. The trial court did not read the requested instruction verbatim, but instead stated:

> I'm reminded that at one point during the course of the trial there was some reference to future pain and suffering, and proof of that kind is usually required to be in the form of expert testimony, that is, a medical person, a doctor testifying to that effect, and there has been no proof of that nature of future pain and suffering.

Defense counsel asserts that the trial court should have flat-out told the jury that they could not consider an award for future pain and suffering, and that the above "watered down" statement to the jury was insufficient.

The standard for an appellate court's review of a trial judge's jury charge was stated in *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855 (Tenn. App. 1996):

> We review the jury charge in its entirety to determine whether the trial judge committed reversible error. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 446 (Tenn. 1992); *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn. 1987); and *Grissom v. Metropolitan Gov't of Nashville,* 817 S.W.2d 679, 685 (Tenn. App. 1991). Jury instructions are not measured against the standard of perfection. *Grissom*, 817 S.W.2d at 685. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Otis*, 850 S.W.2d at 446; *Grissom*, 817 S.W.2d at 685. Furthermore, a particular instruction must be considered in the context of the entire charge. *Elam*, 738 S.W.2d at 174.

*Outdoor West*, 947 S.W.2d at 858.

Upon review of the instructions as a whole, we conclude that the charge given was sufficient to advise the jury that an award for future pain and suffering would be inappropriate.

> 3. Whether the trial court erred in rejecting defendant's requested jury instructions on the Tennessee statutes regarding improper turns and no-passing zones.

Defendant asserts that the trial court erred in failing to instruct the jury on the following statutes:

> **55-8-142. Turning movements. --** (a) No person shall turn a vehicle at an intersection unless the vehicle is in a proper position upon the roadway as required in § 55-8-140, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate

signal in the manner provided in §§ 55-8-143 and 55-8-144 in the event any other traffic may be affected by such movement.

**55-8-121. No-passing zones. --** The department of transportation is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones. When such signs or markings are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions thereof.

Trial courts should give a requested jury instruction (1) if it is supported by the evidence, (2) if it embodies the party's theory of the case, (3) if it is a correct statement of the law, and (4) if its substance has not already been included in other portions of the charge. *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 103 (Tenn. App. 1996).

Appellant asserts that the first statute cited is applicable because "had the plaintiff not changed lanes at a time when he was 500 feet from the intersection, he would have come to a stop behind the traffic that was letting the defendant through and no collision would have occurred." It is undisputed that the plaintiff was established in the turn lane prior to the time of the accident, and there was no proof, or even an allegation, that the physical act of changing lanes was performed negligently. Furthermore, Steward testified that he never saw the plaintiff's car prior to the accident. Perhaps, as appellant also argues, it was negligent for plaintiff to enter the turn lane at a point so far from the intersection. However, T.C.A. § 55-8-140 contains a subsection relating specifically to the plaintiff's alleged conduct in the two-way turn lane. Defense counsel read that statute to the jury during closing argument and the trial court specifically instructed the jury that such was an accurate statement of the law. Refusal of the trial court to instruct the jury on T.C.A. § 55-8-142 was not error.

Appellant also asserts that it was error not to instruct the jury on the statute dealing with no-passing zones because the pavement markings defining each boundary of the turn lane are the same as the markings designating a no-passing zone: a solid yellow line adjacent to a broken yellow line. However, appellant cites to no authority which equates a center, two-way turn lane with a no-passing zone. It is true that a center turn lane cannot be used "solely for the purpose of passing another vehicle," T.C.A. § 55-8-140(5)(C), but it is also true that if we adopted appellant's theory, no driver would ever be able to legally cross the painted boundary and enter the turn lane. In any event, the substance of defendant's requested charge is subsumed in the

statute that defense counsel read to the jury regarding conduct in a turn lane and the trial court specifically instructed the jury that such was an accurate statement of the law. The trial court did not err in refusing to instruct the jury on T.C.A. § 55-8-121.

> 4. Whether the trial court committed prejudicial error when explaining the concept of comparative fault by using a damage figure of $100,000.00 in its example, possibly leading the jury to believe that number was "in the ballpark."

Appellant asserts that in explaining the concept of comparative fault to the jury, the following example offered by the trial court was "erroneous and prejudicial":

> THE COURT: Now, when you consider damages, you don't take into consideration any percentages. Let's say you figure if the Plaintiff wasn't at fault, he would have been entitled to $100,000, but you have found that he was ten percent at fault in this. So on your form, you would say that the Plaintiff, the total value of his claim or the damages that he's entitled to is $100,000, and then I'll look at his fault assessment, and when I see that it's ten percent, then I will reduce that $100,000 by ten percent, but you don't do that, you just give me his damages as if his fleece were white as snow, so to speak, that is, not considering any fault. Have I made myself clear? Any question about that because sometimes that presents a problem? You don't consider fault when you come to damages, but you do consider fault when you try to see which one of the parties actually was responsible for what happened or whether both of them were. Any questions? All right. Is there anything else?
>
> MR. OWENS [defendant's counsel]: That $100,000 figure that doesn't represent your opinion of the case, does it judge?
>
> MR. BERNATSKY [plaintiff's counsel]: I think that's mine.
>
> THE COURT: Just a number. That's for the Jury. They might even think more or less. That's right. They didn't sue for more than $100,000 so they could not consider more.

The Tennessee Supreme Court has held that "[e]ven if a portion of the judge's charge might be objectionable, if it is explained and corrected in other parts of the charge so that the jury would not be misled, this will not be reversible error." *Smith v. Parker*, 213 Tenn. 147, 156, 373 S.W.2d 205, 209 (1963). Upon review of the transcript of the entire jury charge, we think that it is clear that the judge was merely using the $100,000.00 figure as a means of clarifying the concept of comparative fault. Furthermore, the amount of the verdict awarded indicates that the jury did not agree that $100,000.00 was "in the ballpark."

Appellant also asserts that the comment made by plaintiff's counsel, "I think that's mine," in reference to the $100,000.00 figure, was prejudicial in that it led the jury to believe that

7

it was counsel's opinion of the value of the case. This statement was not objected to at trial and therefore cannot now be the basis for granting a new trial. Moreover, plaintiff's counsel had already told the jury that $25,000 would be reasonable. This issue is without merit.

> 5. Whether the verdict was supported by the evidence, or was the result of the passion, prejudice, or caprice of the jury.

Appellant asserts that the jury verdict assessing plaintiff's damages at $35,000.00 was excessive when considering that there was no expert medical testimony presented, there was no proof of permanent injury, medical bills totaled only $924.00, plaintiff had not visited a doctor within the three years preceding trial, plaintiff claimed lost wages of only $2,213.75, and there was only $500.00 in property damage.

When factual determinations made by a jury have been approved by the trial judge, an appellate court may only set aside these factual findings in the absence of any material evidence in the record to support the verdict. *Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997); T.R.A.P. 13(d). In *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980), our Supreme Court said:

> The trial judge's approval of a jury verdict invokes the material evidence rule with respect to all other issues of fact and we know of no reason why that rule should not have the same effect when that approval includes the amount of the award. That action by the trial judge means that he has accredited the testimony of the witnesses on the issue of damages and has evaluated the evidence as supporting the amount awarded. Nevertheless, when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award. But when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed.

*Id.* at 129.

Upon careful review of the entire record, we find that there is material evidence to support the jury's award. Despite the lack of expert medical testimony, there is evidence from which a reasonable jury could find that the plaintiff suffered shoulder pain throughout the four-year period between the accident and trial, and that the plaintiff stopped going to see his doctor because he was told there was nothing more that could be done for his shoulder. Although the jury's award is quite liberal, the amount of the award is not so unreasonable as to indicate that any improper influences were at work.

8

6. Should any of the above not independently constitute error sufficient to justify granting defendant a new trial, does their cumulative effect warrant a new trial?

In light of our findings that none of the issues raised by appellant constitute error, we hold that their cumulative effect is, at most, negligible and does not warrant a new trial.

The judgment of the trial court on the jury verdict in favor of plaintiff is affirmed. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**